FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 29, 2025

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 29, 2025

SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| SAMANTHA HALL-HAUGHT, | No. 102405-3 |
| Petitioner, | |
| v. | |
| STATE OF WASHINGTON, | Filed: <u>May 29, 2025</u> |
| Respondent. | |

WHITENER, J.— The Washington State Constitution, like the Constitution of the United States, guarantees criminal defendants the right to confront witnesses against them in a criminal prosecution. WASH. CONST. art. I, § 22; U.S. CONST. amend. VI. This case revisits the issue of whether the confrontation clause is violated when forensic test results are admitted into evidence without testimony from the lab analyst who conducted the testing. The trial court held that it was constitutional for the forensic test results obtained by a lab technician who performed the testing to be admitted into evidence through the testimony of a laboratory supervisor. The Court of Appeals affirmed the trial court's decision holding that Ms. Hall-Haught's confrontation rights were not violated "[b]ecause the supervisor who

testified and was available for cross-examination had independently reviewed the testing and the results and testified to her own opinions about them." *State v. Hall-Haught*, No. 84247-1-I, slip op. at 1 (Wash. Ct. App. 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/842471.pdf, *review granted*, 3 Wn.3d 1018 (2024). We reverse the Court of Appeals.

FACTS AND PROCEDURAL HISTORY

Samantha Hall-Haught was involved in a head-on collision with Kyra Hall. 2 Verbatim Rep. of Proc. (VRP) at 256-60; 3 VRP at 551. The collision caused the trunk of her vehicle to pop open, spewing drug paraphernalia across the roadway. 2 VRP at 345-46, 364-66, 407-10. Law enforcement responded to the scene of the accident. 2 VRP at 339, 358, 404, 412. Both individuals were transported to the hospital, so the officer did not perform any field sobriety tests on Hall-Haught. 2 VRP at 419-20. Washington State Trooper Williams, upon arrival at the hospital, observed that Hall-Haught had bloodshot and watery eyes, and dilated pupils. 2 VRP at 418-19. Trooper Williams applied for and was granted a search warrant to test Hall-Haught's blood. 2 VRP at 420. Hall-Haught's lab results showed 1.5±0.40

nanograms per milliliter of tetrahydrocannabinol (THC)[1] in her blood, but no alcohol was detected. 2 VRP at 485-86, Ex. 43 (toxicology rep.).

The State charged Hall-Haught with vehicular assault, alleging that she had driven or operated a vehicle either (i) in a reckless manner, and/or (ii) while under the influence of intoxicating liquor or any drug as defined in RCW 46.61.502, and/or (iii) with disregard for the safety of others. Clerk's Papers (CP) at 1. At her jury trial, the State called Katie Harris, a supervisor with the Washington State Patrol Toxicology Laboratory, who testified that she was not the technician who tested the blood samples, but that she reviewed and signed off on the lab report of Hall-Haught's blood samples testing. 2 VRP at 459, 468-83. Harris testified to her experience and training, to include working as a prior bench scientist at the laboratory, and about her knowledge about the Washington State Patrol (WSP) standard operating procedures. 2 VRP at 459-67. Harris testified that as a supervisor, she no longer examined and tested blood samples, but she reviewed the work of the bench scientists. 2 VRP at 467-68. Mindy Krantz was the forensic analyst that performed the toxicology examination and produced the report on Hall-Haught's

---

[1] Tetrahydrocannabinol is the chemical responsible for the majority of marijuana's psychological effects because it attaches to the brain receptors that affect a person's thoughts, mood, coordination, and perceptions of reality. *See* NAT'L INST. ON DRUG ABUSE (NIDA), MARIJUANA 10-11, https://nida.nih.gov/sites/default/files/1380-marijuana.pdf [https://perma.cc/Z5SN-B6LF].

blood samples. Ex. 43 (toxicology rep.). The State called Harris instead of Krantz to testify about the toxicology results. Hall-Haught objected to Harris' testimony and argued that introducing the test results without the testimony of Krantz, the technician who performed the blood test, violated her right to confront and cross-examine the witnesses against her. 2 VRP at 447-48, 457, 484. The trial court admitted the lab test results over Hall-Haught's objection. 2 VRP at 484.

Hall-Haught was convicted of vehicular assault, and she timely appealed. 3 VRP at 650-51, CP at 61-63, 81. On appeal, Hall-Haught argued that she was deprived of her constitutional right to confront the witnesses against her when the lab results indicating THC in her system were admitted into evidence without the testimony of the technician who performed the test. *Hall-Haught*, No. 84247-1-I, slip op. at 1. The Court of Appeals affirmed, finding that under *State v. Lui*, 179 Wn.2d 457, 483, 315 P.3d 493 (2014), an expert witness could testify to their own conclusions even when relying on data prepared by a nontestifying technician. *Hall-Haught*, No. 84247-1-I, slip op. at 4. The Court of Appeals opined that because Harris "only testified to her conclusion, and not the lab technician's," the testimony did not violate the confrontation clause. *Id.* at 7.

Hall-Haught moved for discretionary review and the matter was stayed pending the United States Supreme Court's decision in *Smith v. Arizona*, 602 U.S. 779, 144 S. Ct. 1785, 219 L. Ed. 2d 420 (2024). Following the Supreme Court's decision in *Smith*, we lifted the stay and granted review. Both sides filed supplemental briefs, and we also granted the Washington Association of Criminal Defense Lawyers (WACDL) leave to file a brief as amicus curiae.

ANALYSIS

The Sixth Amendment confrontation clause and the Washington Constitution provide that a defendant in a criminal prosecution shall have the right to confront or meet the witnesses against them. U.S. CONST. amend. VI, WASH. CONST. art. I, § 22. The confrontation clause bars "admission of testimonial statements of a witness who did not appear at trial unless" the witness "was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). A statement is testimonial if "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). It is nontestimonial if the "primary purpose of the interrogation is to enable police assistance to meet an

ongoing emergency." *Id.* at 822. Testimonial statements are barred at trial unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. 36.

We review a claimed violation of a constitutional right de novo. *State v. Blair*, 3 Wn. App. 2d 343, 349, 415 P.3d 1232 (2018). This court has previously wrestled with the question of whether the confrontation clause is violated when forensic test results are accepted into evidence without testimony from the lab analyst who conducted the testing. Prior to 2004, the confrontation clause jurisprudence was governed by the indicia of reliability tests. *Lui*, 179 Wn.2d at 471. This court in response to the United States Supreme Court's "fractured sets of opinions in five major confrontation clause cases,"[2] rejected the indicia of reliability test under *Crawford. Id.* We developed a two-part test for testimony involving expert witnesses and adopted the rule that an expert comes within the scope of the confrontation clause if (i) the person is a witness by virtue of making a statement of fact to the tribunal and (ii) the person is a witness against the defendant by making a statement that tends to inculpate the accused. *Id.* at 462.

---

[2] *See Davis*, 547 U.S. 813; *Michigan v. Bryant*, 562 U.S. 344, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009); *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011) (partial plurality opinion); *Williams v. Illinois*, 567 U.S. 50, 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012) (plurality opinion), *abrogated by Smith v. Arizona*, 602 U.S. 779, 144 S. Ct. 1785, 219 L. Ed. 2d 420 (2024).

In *Lui*, Sione Lui was charged in 2007 with the 2001 murder of his partner, Elena Boussiacos. At trial, the Associate Medical Examiner Dr. Kathy Raven, who performed the autopsy; took the body's temperature, as well as the ambient temperature readings where the body was found; and wrote the autopsy report, did not testify. Instead at trial, the State called the Chief Medical Examiner Dr. Richard Harruff as its witness. Dr. Haruff's opinion was based on the photographs taken of the victim during the autopsy. He testified that the victim had been strangled, and he provided an estimated time of death based on the temperature readings in Dr. Raven's report. The autopsy report was not introduced into evidence. *Id.* at 465. In addition, the chief medical examiner recited the conclusions of the toxicology report that no drugs or alcohol were found in the victim's system. *Id.* Gina Pineda, a lab supervisor who neither observed nor participated in the testing of Lui's DNA samples testified about the DNA results, using a document she prepared that was admitted for illustrative purposes only. *Id.* at 466. Lui challenged the testimony of both witnesses, arguing a confrontation clause violation. Applying the new rule, this court held that Lui's confrontation rights were not violated when Pineda testified about the DNA results. *Id.* at 493. We additionally held that Lui's confrontation rights were not violated when Dr. Harruff testified about the temperature readings and autopsy photos because those data points could not inculpate Lui without the

expert analysis they each provided and he had had the opportunity to cross-examine Harruff. *Id.* at 493-94. This court however, held that Lui's confrontation rights were violated when Dr. Harruff testified about the toxicology report because he added no additional analysis or expertise. *Id*.

Similarly in *Wiggins*, the defendant was charged with driving under the influence (DUI) and a warrant was obtained to test his blood for drugs and alcohol after he refused a breathalyzer test. *City of Seattle v. Wiggins*, 23 Wn. App. 2d 401, 404, 515 P.3d 1029 (2022). Christie Mitchell-Mata, the forensic scientist who performed the blood testing on Wiggins, produced a report that showed Wiggins' blood alcohol content (BAC) as 0.11g/100mL. *Id.* At trial, Mitchell-Mata was unavailable to testify. *Id.* The city called Brian Capron, the reviewer who signed off on Mitchell-Mata's report, to testify on the report and requested Wiggins' BAC results be admitted into evidence. *Id.* Wiggins moved pretrial to exclude Capron's testimony on the blood test results, citing a Sixth Amendment violation. *Id.* at 404-05. The municipal court granted Wiggins' motion and dismissed the DUI charge and the superior court reversed on appeal. *Id.* The Court of Appeals found that the BAC number attributed in Mitchell-Mata's report to Wiggins' blood was the inculpatory statement against him, and Capron added no original analysis to the report to make his testimony inculpate Wiggins. *Id.* at 413. Applying *Lui*'s test, and

citing *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011) (partial plurality opinion), and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2529, 174 L. Ed. 2d 314 (2009), the court held that Wiggins' right to confrontation was violated. *Id.* at 413-15. To introduce the BAC results, Mitchell-Mata was the witness "against" Wiggins whose testimony was required. *Id.*

Recently, expert witness testimony as it implicates the confrontation clause has been clarified. *Smith*, 602 U.S. 779. In *Smith*, the defendant was convicted of drug offenses where drugs were seized. The State had the seized items tested by the Arizona Department of Public Safety's crime lab. *Id.* at 789-90. Lab analyst Elizabeth Rast performed the testing and generated typed notes and a signed report documenting her results. In addition to outlining the procedures she followed, the document also included her conclusion that the items were methamphetamine, marijuana, and cannabis. *Id.* at 790. Rast did not testify at trial. Instead, the State called Greggory Longoni, a forensic scientist with no prior connection to Smith's case to provide "'an independent opinion on the drug testing performed by Elizabeth Rast.'" *Id.* at 790 (quoting court papers). Smith was convicted and his appeal was affirmed. *Id.* at 791. After granting certiorari, the Supreme Court held that the confrontation clause's prohibition on testimonial statements admitted at trial "applies in full to forensic evidence" when the witness is unavailable and the

defendant has not had the benefit of prior cross-examination of the witness. *Id*. at 783. The Court also expressly rejected the view that when an expert recites another analyst's statements as the basis of their opinion, that the confrontation right is not implicated. *Id.* The court explained the statements are admitted for their truth, to show the basis for the expert opinions. *Id.* at 798. The Court, citing its prior holdings in *Crawford*, *Melendez-Diaz*, and *Bullcoming*, held that testimonial out-of-court statements of a forensic analyst may not be introduced at trial unless that analyst is unavailable and the defendant has had a prior chance to cross-examine that analyst. In addition, those statements may not be introduced through a surrogate analyst who did not participate in their creation, even if the surrogate analyst presents the out-of-court statements as the basis for their own expert opinion. *Id.* at 803.

    I.    The lab toxicology report in this case was testimonial

Statements that are made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial are testimonial. *Crawford*, 541 U.S. 36 at 51-52. To determine if a statement is testimonial, the court must decide whether the statement has "'a primary purpose of creating an out-of-court substitute for trial testimony.'" *Bullcoming*, 564 U.S. at 669 (quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011)).

In *Bullcoming*, the defendant was arrested for driving a vehicle while intoxicated (DWI) where the primary evidence used against him was a forensic laboratory report. The report certified that his blood-alcohol level was significantly above the limit for aggravated DWI. *Id.* at 651. At trial, the prosecution did not call as a witness the analyst who performed the testing and signed the certification on Bullcoming's blood-alcohol sample. Instead the prosecution called as a witness another analyst familiar with the lab's testing procedures but who had not participated in or observed the testing of Bullcoming's blood-alcohol sample. *Id.* The Court held that the certification was testimonial because it was created for an "'evidentiary purpose'" to help a police investigation. *Id.* at 664 (quoting *Melendez-Diaz*, 557 U.S. at 311). Furthermore, the Court found that when the State introduced the absent analyst's certification, that analyst "became a witness Bullcoming had the right to confront." *Id.* at 663. The Court held that the "surrogate testimony" of the analyst, who neither signed the certification nor observed or performed the test, did not meet the requirements of the confrontation clause. *Id.* at 652, 664.

Similarly, in *Melendez-Diaz*, Luis Melendez-Diaz and his codefendants were arrested and charged with distributing cocaine and with trafficking in cocaine. *Melendez-Diaz*, 557 U.S. at 308. The primary evidence used against him was the seized bags of a substance resembling cocaine and three "certificates of analysis"

identifying the powder to be cocaine. *Id.* The Court found that the "certificates of analysis" were affidavits that fell within the "'core class of testimonial statements'" described in *Crawford* and the analysts were "witnesses" under the Sixth Amendment. *Id.* at 310-11 (quoting *Crawford*, 541 U.S. at 51). The Court noted that because forensic evidence is "not uniquely immune from the risk of manipulation," confronting the analyst is "one means of ensuring accurate forensic analysis" by exposing a fraudulent or incompetent analyst. *Id.* at 318-19. In addition, the Court also held that the Sixth Amendment does not allow ex parte out-of-court affidavits and the admission of the affidavits as evidence against Melendez-Diaz was error. *Id.* at 329.

The record before us shows that Hall-Haught's blood was seized as evidence to further establish the cause of the collision. Ex. 42. WSP Trooper Williams testified that Hall-Haught was the "causing driver," but she was not cited at the scene because the investigation was still in process. 2 VRP at 436-37. He applied for a search warrant to obtain Hall-Haught's blood sample based on the totality of the circumstances which included (i) a cannabis pipe and paraphernalia at the scene, (ii) Hall-Haught's admission of regular cannabis use, (iii) the mechanism of the collision, and (iv) Hall-Haught's bloodshot and watery eyes, and dilated pupils. 2 VRP at 410-11, 416, 418. Hall-Haught's blood was sent to the WSP toxicology

laboratory that is specifically used for law enforcement DUI drug testing cases. 2 VRP at 459.

Under the analysis in *Crawford*, *Melendez-Diaz*, and *Bullcoming*, the report here was testimonial. The "certificates of analysis" in *Melendez-Diaz* are like Krantz's report where it "'would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Crawford*, 541 U.S. at 52 (quoting court papers). The record provides no information as to Krantz's unavailability to testify or that Hall-Haught had a prior opportunity to cross-examine her. Therefore, under the confrontation clause, Krantz was a "witness" Hall-Haught was entitled to confront at her trial.

II. The WSP toxicology lab report was admitted to prove the truth of the matter asserted

The confrontation clause's prohibition applies only to the introduction of testimonial hearsay, meaning, out-of-court statements offered "'to prove the truth of the matter asserted.'" *Smith*, 602 U.S. at 785 (quoting *Anderson v. United States*, 417 U.S. 211, 219, 94 S. Ct. 2253, 41 L. Ed. 2d 20 (1974)). When a statement is admitted for a reason unrelated to its truth, the clause's "'role in protecting the right of cross-examination'" is not implicated. *Id*. (quoting *Tennessee v. Street*, 471 U.S. 409, 414, 105 S. Ct. 2078, 85 L. Ed. 2d 425 (1985)). A court analyzing a

confrontation clause claim must identify the role that a given out-of-court statement served at trial. *Id.* at 793. If the expert witness communicates an absent witness' out-of-court statement in support of their own opinion, and the statement provides that support only if true, then the out-of-court statement is admitted for its truth. *Id.* at 795.

The Court of Appeals here distinguished *Wiggins* when it applied *Lui*'s two-part test. The court noted that while "'[t]he BAC number attributed to Wiggins's blood is the inculpatory statement against him,'" requiring the technician who obtained that number to testify, the number establishing the THC concentration level in Hall-Haught's blood was independently reached by both the lab technician and Harris. *Hall-Haught*, No. 84247-1-I, slip op. at 6 (alteration in original). The court found that since Harris testified only to her conclusion and not the lab technician's conclusion that the testimony did not violate the confrontation clause. *Id.*

Hall-Haught argues that forensic analyst Krantz's statement was admitted for its truth when Harris, the toxicology lab supervisor, testified to the truth of Krantz's report. Suppl. Br. of Pet'r at 13-14. The State responds that Harris testified to her "'independent conclusion'" and therefore her testimony does not violate the confrontation clause. Reply to Pet. for Rev. at 12 (internal quotation marks omitted)

(quoting *Hall-Haught*, No. 84247-1-I, slip op. at 6). Additionally, the State asserts that Harris' independent opinion was not hearsay because "it did not convey another analyst's out-of-court statements." Suppl. Br. at 4. To support this assertion, the State argues that Harris supervised Krantz's work from the start of the case and also reviewed the sample testing before approving the release of the test results. *Id*. at 4, 7. In its amicus brief, WACDL argues that the State's arguments directly contradict *Smith*, because *Smith* abrogated the United States Supreme Court's prior decision in *Williams v. Illinois*, 567 U.S. 50, 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012) (plurality opinion), as well as the Court of Appeals' reasoning. Br. of Amicus Curiae WACDL at 2-3. WACDL asks that we apply *Smith*'s holding because it clarifies the role of expert testimony using out-of-court statements as the basis for an opinion and modifies the test for admitting forensic evidence that was articulated in *Lui*. Br. of Amicus Curiae WACDL at 7-8, 11-18. We agree as we are now bound by the *Smith* decision.

Hall-Haught's lab reports were introduced to show the truth of what they asserted: that Hall-Haught had cannabis in her system and that it was a contributing factor to the collision. *See* 2 VRP at 490-96. Harris testified about the physiological effects of cannabis and relied on her review of the case file prepared by Krantz to confirm the positive THC results. 2 VRP at 482. Similar to the analyst's testimony

in *Smith*, Harris referred to the toxicology test report and related items it referenced. 2 VRP at 462, 479. Harris described the scientific tools that Krantz, the lab technician, used to analyze Hall-Haught's samples including Liquid Chromatography Time-of-Flight Mass Spectrometry, Liquid Chromatography Tandem Mass Spectrometry, calibrators, and the second quantitative test. 2 VRP at 472-75, 478-80, 482-83. She also confirmed that she reviewed documentation that told her the lab's standard operating procedures were followed, and she testified, "Based on what I observed in the case file, I believe [the *extraction procedures* for the cannabinoid screening] were followed" correctly. 2 VRP at 476-77. Also, based on her review of the case file, she testified that the screening test was positive for both THC and carboxy THC, that the lab's standard operating procedures were followed, and that the tests were done correctly. 2 VRP at 482-83.

Harris' opinion was admitted for its truth. Similar to Longoni's testimony in *Smith*, Harris' opinion was predicated on the nontestifying technician's toxicology test report.

III.    How *Lui* changes in the aftermath of *Smith*

In *Lui*, we articulated a test for expert witnesses built on the plain language of the confrontation clause. The "working rule" was simple: "a person is a 'witness'

for confrontation clause purposes only if he or she makes some statement of fact to the court … and that statement of fact bears some inculpatory character (meaning that the evidence, without the need for expert interpretation, bears on some factual issue in the case)." *Lui*, 179 Wn.2d at 470-71. We clarified in our analysis that our opinion did not allow laboratory reports to be admitted as evidence without effective cross-examination, nor did it allow a laboratory supervisor to "parrot the conclusions of his or her subordinates" because that would circumvent the confrontation clause. *Id.* at 482-83. We concluded that our test "allow[ed] expert witnesses to rely on technical data prepared by others when reaching their own conclusions." *Id.* at 483.

To that end, we held that the supervisor's testimony was not subject to the confrontation clause because the electronic data provided by the laboratory analysts served only as the basis of that testimony. *Id.* at 486, 489. We reasoned that because the supervisor "review[s] the results of the control samples, she review[s] the testing procedures, and she review[s] her subordinate analysts' results at each step of the process," she had sufficient basis and personal knowledge for the confrontation clause to not be offended. *Id.* at 490-91. Our analysis in *Lui* correctly took note of the precedential value of the Supreme Court's decisions in *Melendez-Diaz*, *Bullcoming*, and *Williams*. We, however, misconstrued *Williams* because of the court's fracture and applied the plurality's reasoning that the basis testimony was

17

not admitted for its truth. The United States Supreme Court's decision in *Smith* allows us to course correct.

In *Smith*, the Supreme Court made it clear that "truth is everything" when a forensic expert for the prosecution expresses out-of-court statements as the basis for their opinion. 692 U.S. at 795. If the statement supports the opinion only if it is true, then the statement has been offered for the truth of the matter asserted. *Id.* The expert's opinion in *Smith* was "predicated on the truth of the [analyst's] factual statements … that [the analyst] had performed certain tests according to certain protocols and gotten certain results." *Id.* at 798. To the extent that *Lui* allowed the supervisor's expert opinion to rely on the nontestifying forensic analyst's factual statements as the basis for their opinion, it is unconstitutional under *Smith*. To this extent, *Smith* has abrogated *Lui*.

CONCLUSION

Samantha Hall-Haught's confrontation clause rights were violated. Mindy Krantz, the analyst who performed the testing and wrote the report, was the real witness against Hall-Haught and not Katie Harris. We therefore reverse the Court of Appeals and remand the case for additional proceedings consistent with this opinion.

_(Whitener, J.)_

Whitener, J.

WE CONCUR.

Stephens, C.J.

Gordon McCloud, J.

Johnson, J.

Yu, J.

Madsen, J.

Mungia, J.

No. 102405-3

GONZÁLEZ, J. (concurring) — The Supreme Court has significantly modified

the application of the Sixth Amendment's confrontation clause in the last two

decades. *See Smith v. Arizona*, 602 U.S. 779, 144 S. Ct. 1785, 219 L. Ed. 2d 420

(2024); *Williams v. Illinois*, 567 U.S. 50, 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012)

(plurality opinion); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct.

2527, 174 L. Ed. 2d 314 (2009); *Davis v. Washington*, 547 U.S. 813, 126 S. Ct.

2266, 165 L. Ed. 2d 224 (2006); *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct.

1354, 158 L. Ed. 2d 177 (2004). It is now plain that testimonial out-of-court

statements are not admissible in criminal cases merely because those statements

are reliable. *Crawford*, 541 U.S. at 61.

Our case law has not always kept up. I join the court today in acknowledging

that *Smith* abrogated the test we articulated in *State v. Lui*, 179 Wn.2d 457, 315

P.3d 493 (2014). I write separately to emphasize a few points.

In *Lui* we concluded the confrontation clause "allows expert witnesses to

rely on technical data prepared by others when reaching their own conclusions,

without requiring each laboratory technician to take the witness stand." 179 Wn.2d

at 483. We reasoned that the confrontation clause applied only to witnesses whose

statements inculpate defendants. *Id.* at 482. We ultimately held that a laboratory supervisor could rely on and testify about the test results reached by a nontestifying subordinate without offending the confrontation clause. *Id.* at 486, 489. We concluded the confrontation clause was not offended because the supervisor reviewed "the results of the control samples, she reviewed the testing procedures, and she reviewed her subordinate analysts' results at each step in the process." *Id.* at 490-91. But in light of *Smith*, this aspect of *Lui* is incorrect.

In *Smith*, the Supreme Court said "a prosecutor cannot introduce an absent laboratory analyst's testimonial out-of-court statements to prove the results of forensic testing." 602 U.S. at 783. While the expert in *Smith* was not a supervisor as in *Lui*, in *Smith* the expert attempted to "restate[] an absent lab analyst's factual assertions to support his own opinion testimony." *Id.* To the extent *Lui* permitted a supervisor to rely on an absent analyst's testing when providing testimony as an expert witness—that is unconstitutional under *Smith*. To this extent, *Smith* has abrogated *Lui*. *Compare Lui*, 179 Wn.2d at 497-98, *with Smith*, 602 U.S. at 802-03.

*Smith* makes clear that the State cannot satisfy the confrontation clause by letting a surrogate analyst present out-of-court statements as a basis for their expert opinion. *Smith* specifically reasoned that those statements "come into evidence for their truth—because only if true can they provide a reason to credit the substitute expert." 602 U.S. at 803. At first glance, this new rule seems sound: "The jury

cannot decide whether the expert's opinion is credible without evaluating the truth of the factual assertions on which it is based. If believed true, that basis evidence will lead the jury to credit the opinion; if believed false, it will do the opposite." *Id.* at 796 (citation omitted). What *Smith* leaves unclear is its logical endpoint. While the Court explained that not every statement is testimonial, and thus not every statement that forms the basis of the expert's opinion comes up against the confrontation clause, *Smith* leaves open exactly what is and is not a testimonial statement. *Id.* at 801.  It remains unclear what sort of statements that form the basis of an expert's opinion come up against the confrontation clause, and must be subject to a defendant's cross examination, and what sort of statements do not.

Under *Smith*, the absent analyst's report came in for its truthfulness, which requires the absent analyst to testify—not the surrogate. But what else implicates the truthfulness of the underlying report? Here, the expert who supervised the absent analyst testified as to the test results in the report and the various quality assurance protocols and policies followed by the laboratory, and she addressed how the testing machines are utilized by analysts and how they generate results. Under *Smith*, are the results generated by the laboratory machines, the truthfulness of which the analyst relies on when authoring their report, also subject to the confrontation clause? If such statements are hearsay, which I believe they are (because they are to be used for their truth), are they also testimonial? The

machine's results are inculpatory in that they are generated only for an accusatory or prosecutorial purpose. So, who must be called when evaluating the reliability of the testing process the laboratory analyst relied on in creating their report? Must the designer of the machine that generated the test result testify as to the proper design and accurate functioning of the machine? If so, who else should be required to testify as to the underlying truthfulness of the test?

These issues in *Smith*'s are not mere wrinkles—they will affect our legal system, as courts are bound to struggle to mark the outer limits of *Smith*'s new requirement. To be clear, the purpose of the confrontation clause in our system is a salutary one. Criminal defendants must be empowered to rigorously test the State's evidence, and scrutinizing the results generated by the toxicology laboratory is an effective means of subjecting the State's awesome prosecutorial powers to such scrutiny. Nonetheless, I fear that the logical extension of *Smith* and its abrogation of *Lui* will not help ensure that justice prevails in Washington's courtrooms. Instead, I suspect that the abrogation of *Lui* will, at least for a time while we work through this, increase the work for our laboratories and complicate the trial process.

With these observations, I respectfully concur.

González, J.

Montoya-Lewis, J.